IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DEBORAH BROWN, on behalf of herself and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) ALLY FINANCIAL, INC. ) ) Defendant. ) | Case No. 13-CV-01151-BCW |

UNOPPOSED MOTION OF PLAINTIFF FOR ORDER CONDITIONALLY CERTIFYING SETTLEMENT CLASS, PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, DIRECTING DISTRIBUTION OF CLASS NOTICE, SETTING HEARING FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPOINTING CLASS COUNSEL

Plaintiff Deborah Brown (hereinafter referred to as the "Plaintiff"), on behalf of the class of individuals she seeks to represent (the "Settlement Class"), by and through her counsel of record, moves this Court for an Order: (1) certifying the proposed Settlement Class pursuant to Fed. R. Civ. Pro. 23 for settlement purposes; (2) preliminarily approving the Settlement Agreement and Release attached hereto as Exhibit 1 (the "Agreement")[1] as fair, reasonable and adequate under Fed. R. Civ. Pro. 23, subject to a final determination by the Court; (3) approving the appointment of the Plaintiff as representative of the Settlement Class for settlement purposes; (4) approving the appointment of Class Counsel as counsel for the Settlement Class for settlement purposes; (5) approving the form of mailed notice to be sent to the members of the Settlement Class; (6) directing the Settlement Administrator to mail the Class Mail Notice promptly after entry by the Court of the

---

[1] The Agreement has been finalized and is being circulated for signature among the parties. Plaintiffs will file a fully-executed Agreement prior to the Fairness Hearing. Schedule A to the Agreement is the list of class members, and contains payment information. For privacy reasons, Schedule A will be filed under seal.

Preliminary Approval Order to the Settlement Class by first-class mail to the last known address of such persons; (7) establishing a procedure for members of the Settlement Class to opt out and setting a date, approximately thirty (30) days prior to the date of the final approval hearing but in no event less than thirty (30) days after the mailing of the Class Mail Notice, after which no member of the Settlement Class shall be allowed to opt out of the Settlement Class; (8) establishing a procedure for the members of the Settlement Class to object to the Settlement and setting a date, approximately thirty (30) days prior to the date of the final approval hearing but in no event less than thirty (30) days after the mailing of the Class Mail Notice, after which no member of the Settlement Class shall be allowed to so object; (9) scheduling a hearing on final approval of this Agreement and establishing a procedure for the members of the Settlement Class to appear at the hearing; and (10) staying the Action until further order of the Court, other than as may be necessary to effectuate the Settlement and carry out the terms of the Agreement or the responsibilities related or incidental thereto. In further support hereof, Plaintiff provides the following Memorandum.[2]

## I. APPLICABLE LEGAL AUTHORITIES

When a proposed class-wide settlement is reached, it must be submitted to the court for preliminary approval. H. Newberg & A. Conte, *Newberg on Class Actions* (3d ed. 1992) at §11.41, p.11-87. Preliminary approval is the first of three steps that comprise the approval procedure for settlement of a class action. The second step is dissemination of notice of the settlement to all class members. The third step is a settlement approval hearing. *Manual for Complex Litigation Third*, §30.41 (2000).

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement is "within the range of possible approval." *Manual*

---

[2] Unless otherwise stated in the memorandum, Plaintiff incorporates and adopts by reference the defined terms included in the Agreement.

*for Complex Litigation*, §30.41 at 273. Preliminary approval is merely the prerequisite to giving notice so that the class may be "given the opportunity to address the court as to the reasons the proposed settlement is unfair or inadequate." *In re Plastic Cutlery Antitrust Litigation*, 1998 WL 314655 (E.D. Pa. 1998). Preliminary approval does not require the trial court to answer the ultimate question of whether a proposed settlement is fair, reasonable, and adequate. That determination is made only after notice of the settlement has been given to the members of the class and after they have been given an opportunity to voice their views of the settlement or be excluded from the class. *See* J. Moore, *Moore's Federal Practice* ¶ 23.80[2-1], at 23-479 (2d ed. 1993).

In considering a potential settlement for preliminary approval purposes, the trial court does not have to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, *Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974), and need not engage in a trial on the merits. *Officers for Justice v. Civil Serv. Comm'n*, 689 F.2d 615 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983).

## II. STATEMENT OF THE CASE

### A. *Background Facts*

Ally is an auto financing company. When a consumer purchases a vehicle from an auto dealer, the consumer and the selling dealership enter into a retail installment contract ("RIC") that governs the financing arrangement for the vehicle. RIC's are typically assigned by the dealership to a bank or financing company which pays the dealership for the value of the RIC and takes assignment of all rights and obligations under the RIC. RIC's generally provide that the purchaser will make periodic payments to the finance source for a specified term, and also set forth the amount financed, annual percentage rate, total amount financed and the various charges included in the financing plan.

In connection with vehicle sales, dealerships frequently offer purchasers the option to purchase "gap" protection in exchange for a specified payment. Gap protection generally covers the difference between what the vehicle owner's primary liability and collision insurer pays when a vehicle is a total loss as a result of an accident or theft, and the amount the owner still owes on the outstanding finance account at the time of loss. The gap protection purchased by Plaintiff was in the form of a written standardized contract addendum to the RIC (hereinafter referred to as the "GAP Contract"). The relevant provision of the GAP Contract is as follows:

> AGREEMENT: In consideration of the purchase price paid, Dealer/Creditor agrees that in the event of the Total Loss of the Vehicle, and subject to all of the terms and conditions of this Addendum, Dealer/Creditor will waive Your liability for the difference between the Net Finance Contract Payoff as of the Date of Loss and the actual cash settlement of Your Primary Automobile Insurance Company; Dealer/Creditor will also waive Your Primary Automobile Insurance Company deductible not to exceed $1,000; and the total amount of Your liability the Dealer/Creditor will waive will not exceed the Maximum Limit of Payments. (See "State Provisions"; restrictions may apply.)

In this case, Plaintiff understands that the GAP Contracts at issue were prepared by CNA National Warranty Company ("CNA"). CNA also served as the administrator of the GAP Contracts and claims made by owners under GAP Contracts.

Plaintiff purchased a new vehicle that was financed through an RIC that was assigned by the dealership to Ally, and also purchased a GAP Contract issued and administered by CNA. Several years later, Plaintiff was involved in an auto accident and her vehicle was deemed a total loss by her primary auto insurer. Plaintiff's auto insurer reduced her insurance benefits by a "condition adjustment," which is a deduction taken on insurance benefits due to the condition of the vehicle, such as excessive wear, prior damage and other factors that can affect the overall value of the vehicle. Plaintiff's auto insurance proceeds were not sufficient to completely pay off her outstanding loan account balance with Ally. Plaintiff made a claim for benefits under the GAP

Contract, but the payment under the GAP Contract was also reduced by the same "condition adjustment," leaving Plaintiff with an account balance with Ally.

Plaintiff filed suit alleging that Ally breached the GAP Contract by improperly making a "condition adjustment" to the amount paid under her GAP Contract. Plaintiff alleged that Ally treated everyone situated like Plaintiff in the same manner, thus making this action susceptible to class treatment.

Ally has denied Plaintiff's allegations, and contends that the GAP Contract was properly administered and applied with respect to Plaintiff's claim.

  B. *Procedural History*

1. On November 21, 2013, Plaintiff filed a Complaint in the United States District Court for the Western District of Missouri styled *Brown v. Ally Financial, Inc.,* Case No. 13-CV-01151, seeking, on behalf of herself and all others similarly situated, monetary damages, restitution, and declaratory and injunctive relief from Ally, based upon the alleged improper sales, issuance, financing and administration of contracts providing "gap" protection in connection with automobile financing.

2. On January 15, 2014, Ally filed its Amended Answer of Defendant Ally Financial, Inc.

3. On February 14, 2014, Plaintiff propounded her first request for production of documents and first set of interrogatories. Throughout the subsequent year, and continuing through the settlement discussions referenced herein, Ally, and CNA in cooperation with Ally, have produced voluminous documents and electronic information to Plaintiff in response to the discovery requests and for purposes of settlement evaluation.

4. On September 29, 2014, settlement discussions took place as part of the Court's MAP program before mediator Kirk Goza. The parties to the settlement negotiations included Plaintiff, Class Counsel, and Ally and CNA and their respective counsel. A settlement was not reached, but discussions continued and additional information related to the claims was exchanged by the Parties.

5. On May 19, 2015, the Parties engaged in a follow-up mediation session with Mr. Goza. The Parties did not reach an agreement that day, but they continued negotiations with the assistance of Mr. Goza.

6. On May 22, 2015, Class Counsel, Ally and CNA confirmed an agreement, subject to execution of a mutually agreeable written ssettlement aagreement and preliminary approval and final approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure.

7. Since May 2015, the parties have been actively working on exchanging the necessary documents and data necessary to prepare the settlement pleadings.

### III. THE SETTLEMENT

#### A. *Terms of the Settlement*

Under the terms of the Agreement, Ally and CNA have agreed to: (a) pay the sum of Two Hundred Seventy-two Thousand Seven Hundred Thirty-four Dollars and Forty Five Cents ($272,734.45) to reimburse amounts for the benefit the Settlement Class Members related to claims made on a GAP Contract (as specifically defined in the Agreement) prior to Preliminary Approval; (b) modify their procedures, as necessary, to eliminate reductions to gap waiver amounts paid under a GAP Contract for Condition Adjustments (as specifically defined in the Agreement) in connection with claims made on GAP Contracts effective on or before entry of the Preliminary

Approval Order; and (c) waive all outstanding deficiency balances due on the accounts of any Settlement Class Member related to a GAP Contract.

Under the terms of the Agreement, Class Counsel will petition the Court for an award of attorneys' fees and expenses in accordance with Fed. R. Civ. P 23(h), which the Court may award in its sole discretion. Ally and CNA do not, and will not, oppose or object to this request for attorneys' fees up to the amount set forth in the Agreement. The payment of attorneys' fees will not reduce the benefits provided to the Settlement Class Members pursuant to this Settlement.

Ally and CNA will also not oppose Class Counsel's application to the Court to award a Service Award to the Plaintiff to be paid by Ally and CNA in the amount set forth in the Agreement. The Service Award is in recognition of the substantial time, devotion and commitment the Plaintiff has contributed to this litigation, and for her work in prosecuting the claims of the Settlement Class, including, but not limited to her appearance at mediation sessions, active involvement in the investigation and discovery process and general assistance in reaching the resolution proposed by the Settlement. The Service Award will not reduce the benefits paid to the Settlement Class pursuant to this Settlement.

  *B.*  <u>*Representation*</u>

The Action has been competently and vigorously prosecuted and defended. Plaintiff in the Action is represented by Robert A. Horn and Joseph A. Kronawitter of the law firm Horn Aylward & Bandy, LLC, 2600 Grand Blvd., Ste. 1100, Kansas City, MO 64108 and Brian T. Meyers of the Law Offices of Brian Timothy Meyers, 1125 Grand Blvd., Ste. 1610, Kansas City, MO 64106 ("Class Counsel").

Ally is represented by Todd W. Ruskamp and Rebecca J. Schwartz of the law firm Shook, Hardy & Bacon L.L.P. ("Ally Counsel"). CNA is represented by Brent R. Austin of the law firm

Eimer Stahl LLP, 224 S. Michigan Avenue, Chicago, IL 60604 and Edward J. Tafe of the law firm Elenius Frost & Walsh, 555 Mission Street, Suite 330, San Francisco, CA 94105 ("CNA Counsel"). Plaintiff, Ally and CNA are represented by counsel with extensive experience in complex and class-action litigation.

      C.      *Investigation*

In pursuing the claims of the Settlement Class, and in evaluating the merits of the Settlement, Class Counsel have reviewed voluminous data and documents, conducted witness interviews, held meetings and conferences between representatives of the Parties, and investigated the applicable law as applied to the facts regarding the alleged claims of the Settlement Class, the potential defenses thereto, and the damages incurred by the Settlement Class.

      D.      *Settlement Negotiations*

Ally and CNA expressly deny all allegations of wrongdoing made in the Action, and contend that at all relevant times the coverage provided by the GAP Contracts was proper, appropriate and authorized under the terms of those contracts. Nevertheless, in an effort to reach a comprehensive settlement of the Action, beginning in early 2014, Class Counsel, Ally Counsel, CNA Counsel and the Parties began to engage in extensive arms-length settlement negotiations and mediations. The Parties were fully and adequately informed of all facts necessary to evaluate the case for settlement. Through these settlement negotiations, which culminated in a mediation session on May 19, 2015, utilizing an experienced neutral mediator, Kirk Goza, the parties were able to agree upon an outline of principal settlement terms. Over the intervening weeks and months, the parties have worked diligently to resolve numerous issues related to the Parties' outline of terms, exchange discovery and information necessary to document the claims and damages of the Settlement Class and prepare and execute the Agreement.

## IV. CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS

Plaintiff requests certification of a Settlement Class for purposes of obtaining Final Approval of the Settlement. Certification of the Settlement Class is appropriate under Federal Rules of Civil Procedure 23 for the reasons set forth below. Ally and CNA do not oppose class certification of a Settlement Class under the terms agreed, and for settlement purposes only, but reserve all their objections to class certification.

### A. *The Settlement Class*

The Settlement Class is defined as: all individuals in the United States who entered into a GAP Contract, and who, during the period from January 1, 2003, through and including _____ (the date an order was entered granting Preliminary Approval of the Settlement), made a claim under a GAP Contract. GAP Contract is defined as: a guaranteed asset protection contract or guaranteed auto protection contract administered by CNA as part of a retail installment sale contract assigned to Ally for the purpose of purchasing an automobile.

### B. *Rule 23(a) Standards Are Satisfied*

Under Rule 23(a), a settlement class must meet four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995). This proposed Settlement Class satisfies all four requirements.

#### 1. Numerosity.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no exact numerical formula for determining whether a class is sufficiently numerous, but it is a determination that must be made by the district court "in light of the particular circumstances of the case . . ." *Arkansas Ed. Ass'n v. Board of Education of the Portland, Arkansas*

*School District,* 446 F.2d 763, 765 (8th Cir.1971); *See also Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980), *cert. denied*, 449 U.S. 1113 (1981).

Here, the proposed Settlement Class consists of more than 1,700 individuals. Thus, joinder is impracticable and the numerosity requirement is satisfied.[3]

    2.    <u>Commonality</u>

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." The Eighth Circuit Court of Appeals has noted:

> Commonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.

*DeBoer v. Mellon Mortgage Company*, 64 F.3d 1171, 1174 (8th Cir. 1995) [citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir.1982) (accord, *American Fin. Sys., Inc. v. Harlow*, 65 F.R.D. 94, 107 (D.Md.1974)), *cert. denied,* 460 U.S. 1083 (1983)].

In the instant case, numerous questions of law and fact are common to the Settlement Class and thus, satisfy the requirement of "commonality". The GAP Contracts issued to the Settlement Class are essentially uniform, and CNA acted uniformly with respect to the Settlement Class in administering the GAP Contracts. Plaintiff and the Settlement Class held the same type of GAP Contract with similar contractual terms that imposed common contractual duties upon Ally and CNA regarding the method for calculation of coverage under the GAP Contract, and the alleged damages flowing from the alleged breach of each GAP Contract are the same type of injury (i.e., continuing to owe money on their car finance accounts despite having "gap" coverage). The largely identical nature of the breach of contract claims of the Settlement Class is sufficient to satisfy the

---

3 Class actions have been routinely certified even where the class amounts to less than one hundred members. *See, e.g., Arkansas Educ. Ass'n v. Bd. Of Educ.,* 446 F.2d 763, 756-66 (8th Cir.1971) (20 class members sufficient); *Swanson v. American Consumer Industries,* 415 F.2d 648, 653 (4th Cir. 1967) (18 class members sufficient); *Riordan v. Smith Barney,* 113 F.R.D. 60 (N.D. Ill.1986) (10–29 class members sufficient); *Sala v. National Railroad Passenger Corp.,* 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40–50 class members sufficient).

"commonality" requirement of Rule 23(a)(2). Thus, the "commonality" requirement of Rule 23 is satisfied by the proposed Settlement Class.

        3.      Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties (be) typical of the claims or defenses of the class." The "typicality" requirement as customarily applied tends to merge with "commonality." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, n.13, 102 S. Ct. 2364, 2371 n.13, 72 L. Ed. 2d 740 (1982). Consequently, the Eighth Circuit has determined that the "typicality" requirement of Rule 23(a) is "fairly easily met so long as other class members have claims similar to the named plaintiff"[4] or "the same or similar grievances as the plaintiff."[5]

In this matter, "typicality" is established because the GAP Contract held by members of the Settlement Class was allegedly breached because the GAP Contract payments failed to satisfy in full the remaining outstanding balance on the automobile account owing at the time of the loss. Although Ally and CNA dispute that the amounts paid under the GAP Contracts were improper, it was the failure of the GAP Contract payments to satisfy the full outstanding remaining account balance that was the single act that gave rise to the claims of the Settlement Class. Thus, the Settlement Class, including Plaintiff, has the same breach of contract claim because they held similar GAP Contracts that were allegedly breached by the same act. This sufficiently illustrates that there is "typicality" with respect to the breach of contract claim. The "typicality" requirement of Rule 23(a)(3) is satisfied.

---

4 *DeBoer v. Mellon Mortgage Company*, 64 F.3d 1171, 1174 (8th Cir. 1995); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562 (8th Cir.1982).
5 *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir.), *cert. denied,* 434 U.S. 856, 98 S. Ct. 177, 54 L. Ed. 2d 128 (1977).

### 4. Adequate Representation

The final prerequisite of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A proposed class satisfies this prerequisite if the following elements are met: "(1) the plaintiff's attorney is qualified, experienced, and will competently and vigorously prosecute the suit, and; (2) that the interest of the class representative is not antagonistic to or in conflict with other members of the class." *Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc.*, 213 F.R.D. 537, 544 (W.D. Mo. 2002); *Fielder v. Credit Acceptance Corp.*, 175 F.R.D. 313, 320 (W.D. Mo.1997); *See also Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-563 (8th Cir.1982); 1 Newberg on Class Actions, § 3.22 at 198.

With respect to the proposed Settlement Class, both elements of Rule 23(a)(4) are satisfied. First, there is no conflict between the members of the Settlement Class. On the contrary, Plaintiff and the Settlement Class have an identical interest in their common claims, and they hold the same claims. Furthermore, Plaintiff is not "antagonistic" to the Settlement Class, and she has vigorously prosecuted and pursued these claims.

Similarly, there should be no dispute that the three attorneys from two separate law firms who have entered their appearances on behalf of Plaintiff and the Settlement Class have substantial experience in the arena of class actions and consumer litigation. Class Counsel are qualified, experienced and have vigorously pursued the claims of the Settlement Class. Under these circumstances, the requirements of Rule 23(a) are met with respect to the proposed Settlement.

### C. *Rule 23(b)(3) Standards Are Satisfied*

The proposed Settlement also meets the requirements of Rule 23(b)(3) which allows class certification where common questions of law and fact predominate over individual questions and

class treatment is superior to individual litigation. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618 (1997). The test is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. at 623.

Here, the proposed Settlement Class is sufficiently cohesive. As described above, the Plaintiff and the Settlement Class seek redress for the same claim (i.e., breach of contract). Because these claims all arise out of events that occurred uniformly throughout the Settlement Class, common questions predominate over individual questions.

Furthermore, class resolution is superior to other available methods for the fair and efficient adjudication of this controversy. The claims of the Settlement Class would prove uneconomical for individual action because litigation costs could dwarf potential recovery.

In summary, certification of the proposed Settlement Class is appropriate under Federal Rules of Civil Procedure 23(a) and 23(b)(3). Accordingly, the Plaintiff respectfully suggests that the Court conditionally certify the proposed Settlement Class.

## V. PRELIMINARY APPROVAL OF THE SETTLEMENT

As set forth above, the question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement is "within the range of possible approval." *Manual for Complex Litigation*, §30.41 at 273. Preliminary approval does not require the trial court to answer the ultimate question of whether a proposed settlement is fair, reasonable, and adequate. That determination is made only after notice of the settlement has been given to the members of the class and after they have been given an opportunity to voice their views of the

settlement or be excluded from the class. *See*, *e.g.*, *Moore's Federal Practice* ¶ 23.80[2-1], at 23-479 (2d ed. 1993).

Plaintiff respectfully submits that the Settlement is "within the range of possible approval" and thus, preliminary approval of the Settlement is warranted. The terms of the Agreement provide a plan for notice to the Settlement Class, for objections by members of the Settlement Class, for members of the Settlement Class to "opt out" of the Settlement, for distribution of Settlement benefits, for oversight of the Settlement process, and for final certification of compliance with the terms of the Settlement. The terms of the Agreement also provide that, if for any reason the Settlement does not become final, the Parties will be free to assert any claim or defense that could have been asserted at the outset of the Action and the Action will continue as if this motion and accompanying documents were never filed.

## VI. DISTRIBUTION AND FORM OF NOTICE TO THE SETTLEMENT CLASS

The Court is respectfully requested to direct distribution of notice to the Settlement Class, and approve the form of such notice as set forth in the Agreement.

Federal Rule of Civil Procedure 23(c)(2) requires the Court to direct to members of the Settlement Class the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974). As the United States Supreme Court has held, notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id.* Where the names and addresses of the class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable." *Id.* at 175. If notice by mail is ordered and addresses are readily available, publication of notice is not necessary and is, in

fact, "duplic[ative] and serve[s] no purpose." *See, e.g.*, *United States v. Truckee-Carson Irrigation Dist.*, 71 F.R.D. 10, 18 (D. Nev. 1975).

Here, the Parties propose that notice of the Settlement will be made by direct mail notice to the Settlement Class. The Parties will provide the Settlement Administrator with a list of the members of the Settlement Class, along with their last known address. Prior to mailing the Class Mail Notice to the Settlement Class, the Settlement Administrator will update the addresses by use of the United States Postal Service's National Change of Address database or another address database service (e.g., Accurint, Intelius). The Class Mail Notice shall be mailed within fourteen (14) days of Preliminary Approval. The Settlement Administrator will re-mail any returned notices to any new address disclosed within forty-five (45) days after Preliminary Approval. To the extent any notice is returned a second time, the Settlement Administrator shall undertake reasonable efforts to locate current addresses for said class member(s). Plaintiff respectfully suggests that this notice program is appropriate under the circumstances, meets the requirements of due process, and distribution of the Class Mail Notice in the manner set forth above is fair, appropriate and the "best notice practicable" under the circumstances.

In terms of the actual notice to be provided, any notice provided to class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. *See* Fed. R. Civ. P. 23(c)(2). The proposed Class Mail Notice is attached to the Agreement as Ex. A. The Class Mail Notice informs: the Settlement Class of the background of the litigation and the proposed Settlement; describes the relief the proposed Settlement will provide; describes the procedures for

participating in the Settlement, opting out of the Settlement, or submitting objections; and advises the Settlement Class that, if they do not opt out, they will be bound by any final judgment in this case, including a release of claims. Thus, the Class Mail Notice is accurate and informs the Settlement Class of the material terms of the Settlement and their rights pertaining to the Settlement. The Parties propose that Jeff Dahl of Dahl, Inc., 6465 Wayzata Boulevard, Minneapolis, MN be appointed as the Settlement Administrator.

Plaintiff requests that the Court approve the proposed form of Class Mail Notice, approve the proposed notice plan and designate Dahl, Inc. as the Settlement Administrator to carry out the notice plan. Plaintiff further requests that the Court direct the Settlement Administrator to mail the Class Mail Notice promptly after entry by the Court of the Preliminary Approval Order to the Settlement Class by first-class mail to the last known address of such persons.

## VII. ESTABLISHMENT OF PROCEDURE TO OPT-OUT OF OR OBJECT TO THE SETTLEMENT AND FOR FINAL APPROVAL OF THE SETTLEMENT

Plaintiff requests the Court to set a hearing to: (i) determine finally whether the Settlement Class satisfies the applicable requirements of Rule 23 and should be finally certified for settlement purposes only; (ii) review and rule upon objections, if any, regarding the Settlement; (iii) consider the fairness, reasonableness and adequacy of the Settlement; (iv) consider Class Counsel's application for an award of attorneys' fees and reimbursement of expenses; (v) consider Class Counsel's application for a Service Award for Plaintiff; (vi) determine the validity of opt-out requests; and (vii) consider whether the Court shall issue a final judgment and order approving the Settlement and dismissing this action. The parties propose the following schedule:

16

Case 4:13-cv-01151-BCW   Document 59   Filed 11/17/15   Page 16 of 19

| 10 days after Preliminary Approval | Last day for Ally and CNA to serve CAFA Notice |
|---|---|
| 14 days after Preliminary Approval | Last day for Settlement Administrator to mail Class Mail Notice |
| 45 days after Preliminary Approval | Last day for Settlement Administrator to complete second, follow-up mailed Class Mail Notice for incomplete/returned mailings |
| 55 days after Preliminary Approval | Last day for Plaintiff to file request for attorney fees, costs and Service Award |
| 70 days after Preliminary Approval | Last day for members of Settlement Class to serve objections or file opt-out requests |
| 80 days after Preliminary Approval | Last day for the Parties to respond to objections to Settlement, if any |
| 100 days after Preliminary Approval | First day upon which the Court may hold the Fairness Hearing and grant final approval pursuant to 28 U.S.C.A. § 1715(d) |

For the Court's convenience, Plaintiff has attached as Exhibit B to the Agreement a proposed Preliminary Approval Order granting preliminary approval of the Settlement that incorporates the deadlines set forth above.

## VIII. APPOINTMENT OF CLASS COUNSEL

Pursuant to the requirements of Fed. R. Civ. P. 23(g), a Court certifying a case as a class action "must appoint class counsel". Plaintiff respectfully requests the Court to appoint the undersigned three attorneys as counsel for the Settlement Class. The experience and qualifications of the proposed class counsel have been established, as set forth in the declarations attached hereto as Exhibits 2-4. The proposed class counsel will zealously prosecute the claims of the Settlement Class.

## IX. STAY OF ACTION

Finally, Plaintiff requests that this Court stay the Action pending the Final Hearing Date, other than as may be necessary to effectuate the Settlement and carry out the terms of the Agreement and responsibilities related or incidental thereto. A stay is appropriate to allow the

Parties to focus on completing the tasks related to the Court's consideration of whether the grant Final Approval to the Settlement. It also allows the Parties to prepare for the Final Hearing Date without the distraction, burden and cost of matters ancillary or unrelated to the Settlement.

WHEREFORE, Plaintiff Deborah Brown respectfully moves the Court for an Order (1) conditionally certifying a Settlement Class; (2) preliminarily approving the proposed Settlement between the Parties and approving the Agreement as fair, reasonable and adequate, subject to a final determination by the Court; (3) approving the form of mailed notice to be sent to the Settlement Class and directing distribution of Class Mail Notice to the Settlement Class by the Settlement Administrator promptly after entry of the Preliminary Approval Order; (4) establishing and approving a procedure for the Settlement Class to opt-out of or object to the Settlement; (5) scheduling a final hearing for approval of class certification and the Settlement and Agreement; (6) approving the appointment of Plaintiff as a representative of the Settlement Class and Class Counsel as counsel for the Settlement Class; and (7) staying the Action, other than as may be necessary to effectuate the Settlement and carry out the terms of the Agreement and responsibilities related or incidental thereto; and for such other and further relief the Court deems proper.

Respectfully submitted,

   /s/ Joseph A. Kronawitter
Robert A. Horn             MO # 28176
Joseph A. Kronawitter    MO # 49280
HORN AYLWARD & BANDY, LLC
2600 Grand Boulevard, Suite 1100
Kansas City, Missouri 64108
Telephone: (816) 421-0700
rhorn@hab-law.com
jkronawitter@hab-law.com

Brian Timothy Meyers        MO # 32636
LAW OFFICES OF BRIAN TIMOTHY MEYERS
1125 Grand Blvd., Suite 1610
Kansas City, Missouri  64106
Telephone: (816) 842-0006
btmeyers@btm-law.com

**PROPOSED CLASS COUNSEL**

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 17, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all person registered for ECF as of that date.

                                                   ____*/s/ Joseph A. Kronawitter*____